## Romig Estate.

Argued October 7, 1952. Before Rhodes, P. J., Hirt, Reno, Dithrich, Ross, Arnold and Gunther, JJ.

336

*Arlin M. Adams,* with him *Bancroft D. Haviland, Gilbert W. Oswald, Paul Edelman* and *Schnader, Harrison, Segel & Lewis,* for appellants.

*Richard H. Kutz,* for appellee.

OPINION BY HIRT, J., January 20, 1953:

In March 1945 Irvin B. Romig along with C. Raymond Cleaver and Katherine G. Cleaver, his wife, bought a tract of about 4½ acres of land partly in the Borough of St. Lawrence and extending into Exeter Township in Berks County. Romig paid $450, being one-half of the purchase price, and the Cleavers paid a like amount; the land was conveyed to them as tenants in common, the Cleavers together taking an undivided one-half interest by entireties. After the purchase of the land Romig on April 9, 1945, entered into a written agreement with the Cleavers providing: ". . . it is now agreed by and between the said parties to these presents that in the event of the death of either the party of the first part or the party of the second part the survivor shall have the option of purchasing the decedent parties interest in said tract for the sum of four hundred and fifty dollars ($450.00) this being one half of the original purchase price of nine hundred dollars ($900.00)." On June 2, 1945, a second writing was executed by the same parties which provided that in the event of the death of either

Romig or both of the Cleavers ". . . the survivor shall upon thirty days' notice from the legal representative of the deceased, pay to the estate of the deceased the sum of Four Hundred Fifty ($450.) Dollars, . . . and receive therefor a quit-claim deed from the legal representative of the estate of the deceased to all right, title and interest in said land . . ."

Irvin B. Romig died testate on December 11, 1949; Reading Trust Company was appointed administrator c.t.a. of his estate. Under the will Leroy H. Romig, son of decedent, received a one-half interest in the residuary estate after the payment of specific legacies. On February 18, 1950, the Cleavers tendered $450 to the Reading Trust Company and demanded a conveyance to them of decedent's one-half interest in the land. On the refusal of the Trust Company as administrator to comply with the demand, the Cleavers in this proceeding petitioned the court to decree specific performance of decedent's contract. All parties in interest under his will were given notice of the petition by citation, in accordance with §18 of the Fiduciaries Act of June 7, 1917, P. L. 447, then applicable. The court, after hearing, ordered specific performance of the contract as prayed for. Both the administrator of the estate of Irvin B. Romig and Leroy H. Romig, residuary legatee, have appealed.

It is now, for the first time, asserted that the contract between the Cleavers and Irvin B. Romig did not give them the right to buy after his death, but on the contrary gave the representative of his estate the option of offering to sell his interest in the land to the Cleavers and compelling them to buy for $450 upon 30 days notice. The original agreement of April 9, 1945, was drawn by a justice of the peace. There is evidence that, as drawn, the agreement was criticized by appellant Leroy H. Romig on behalf of his father

and that after consulting with the Cleavers, he drew the contract of July 2, 1945, principally to put a time limit of 30 days after notice, on the right of a survivor to exercise the option to buy. He inserted other provisions not in issue here which admittedly clarified the understanding of the parties. He testified that Mrs. Cleaver asked him to draw another contract because the original agreement was not sufficiently specific and was not complete. The second contract clearly was intended to supplement and not supplant the first. That is clearly indicated by this recital in the second agreement: ". . . it being the intention of this agreement to modify and supplement a similar agreement entered into between said parties under date of April 9th, 1945 . . ." The parties during the life of Irvin B. Romig, and certainly after his death up to the time of this appeal, construed the agreement as giving the Cleavers the option to buy the decedent's interest in the land.

In interpreting the written agreements our endeavor should be to effectuate the intention of the parties. *Hess et al. v. Jones,* 335 Pa. 569, 7 A. 2d 299. And since both the parties to the agreement placed the interpretation upon it, contended for by the petitioners, that meaning is to be adopted as a manifestation of their agreement. Cf. Restatement, Contracts, §235 (e). Moreover, in the answer of Leroy H. Romig, appellant, he did not deny that the Cleavers had an option under their agreement with Irvin B. Romig to buy his interest after his death and the right was not questioned by his counsel in stating the theory of the defense nor in this appellant's requests for findings on the trial of this case. It was taken for granted in the court below that the contracts gave the Cleavers the option to buy and the case was tried and defended on that theory. For this reason alone appellant can-

not now construe the contract otherwise. Our appellate courts will not consider "any new theory or attitude toward the trial of the case which was not properly before the court, under the theory on which the case was tried . . .": *Morrett v. Fire Assn. of Phila.*, 265 Pa. 9, 108 A. 171.

The above comment also bears directly on the appellants' contention that the contract was uncertain and should not be enforced specifically for that reason under the established rule of *Beaver v. Slane*, 271 Pa. 317, 322, 114 A. 509 and like cases. In addition to the construction put on the contract by the conduct of the parties in interest, there is testimony of Katherine G. Cleaver, of Irvin B. Romig's original proposal to her that they buy the land in common and that on the death of either, the survivor have the option to buy the decedent's share at cost. And she also testified that at the time of the execution of the agreement of July 2, 1945, Irvin B. Romig said: "Now there is no change made in the $450, the only change is the thirty days after notice" within which it must be paid. She was an incompetent witness under the Act of May 23, 1887, P. L. 158, §5(e) 28 PS §322 (*Stevenson v. Titus et al., Admrs.*, 332 Pa. 100, 2 A. 2d 853) but since the question of her competency was not raised, the lower court was justified in giving probative value to her testimony. Cf. *Snyder Estate*, 368 Pa. 393, 84 A. 2d 318.

The weakness of the appellants' position in this appeal was foreshadowed by the multiple defenses set forth by Leroy H. Romig in his answer to the petition, namely: the contract was not founded upon a valid consideration; it was not under seal and was not acknowledged; the value of one-half interest in the land involved was $5,000 and a sale of that interest for $450 was inadequate, unjust and unconscionable; that

decedent was 83 years old and did not understand the significance of his contract when he executed it. Not one of the above allegations was supported by any evidence. Moreover, in a supplemental answer, filed four months after his first answer, Leroy H. Romig asserted a new defense which was inconsistent with the position previously taken by him. He there set up an alleged written contract with his father dated July 17, 1949, under the terms of which he was to receive a deed for his father's interest in the land on payment to him of $450. The integrity and the very existence of the alleged contract were in doubt. Only a photostatic copy of the alleged original was produced. The person whose name appeared as a witness to the signature of Irvin B. Romig and his son testified that he did not see them sign; Leroy H. Romig never asserted the existence of such a contract in his conversations with Mrs. Cleaver although he had dealt with her in relation to her interest in the land on behalf of his father. Moreover, he admitted that he had not paid the full amount of the purchase price. He did claim partial payment, however, in the value of some services which he had performed on the land for the benefit of his father. But in any view, whether the son actually had such contract from his father is immaterial under the circumstances and the court so found. The option given to the Cleavers to purchase was an interest in the land dating from the time when the option was given by Irvin B. Romig in the original agreement. Appellant, Leroy H. Romig had full knowledge of the option so given and therefore could not acquire the status of a bona fide purchaser, without notice of the prior interest in the land acquired by the Cleavers. *Peoples St. Ry. Co. v. Spencer,* 156 Pa. 85, 27 A. 113; *Kerr et al. v. Day,* 14 Pa. 112. For this reason any rights under his asserted agreement would have

been unenforceable against the option in the Cleavers to purchase decedent's interest under their contract.

The lower court upon sufficient competent evidence found that the Cleavers had an enforceable option to buy the interest of the decedent under a contract complete and certain in all essential elements. The court therefore properly gave effect to the option, when exercised in accordance with the agreement, by ordering specific performance of the contract.

Decree affirmed at the costs of the estate.